**NEW MARK GLEN MOBILE HOME PARK v. S. T. CORPORATION.**

Docket No. 770612-WS (CP).    Order No. 8321.

Florida Public Service Commission.

May 24, 1978.

H. James Stadelman, Fort Lauderdale, for the complainant.

Arthur M. Wolff, Fort Lauderdale, for the respondent.

The following commissioners participated in the disposition of this matter — PAULA F. HAWKINS, Chairman, and Commissioners WILLIAM T. MAYO and ROBERT T. MANN.

BY THE COMMISSION.

Pursuant to notice, the commission by its duly designated hearing examiner, William B. Thomas, held a public hearing in this matter in Pompano Beach on October 12, 1977.

The examiner's recommendations were served on the parties and timely exceptions thereto were taken by the complainant. Oral argument was heard on the exceptions on March 27, 1978. Having considered all the evidence, we now enter our order.

On January 23, 1978, the examiner filed his report as follows —

This docket was opened on the complaint of New Mark Glen Mobile Home Park against S. T. Corporation which alleged that the utility was improperly billing for the amount of water used. S. T. Corporation is a water and sewer utility under the jurisdiction of this commission and New Mark Glen Mobile Home Park is its only customer.

Since approximately September of 1976 the trailer park has been operated by a court appointed receiver. When the receiver inspected the park records, it was found that the park had been receiving a credit against the amount of water it used. It was assumed that this credit represented the amount of water used by the utility in the operation of its sewage treatment plant. Each month subsequent to September, 1976, therefore, the trailer park deducted approximately eleven percent from the utility's bill for estimated water used in the sewage plant, and remitted the balance.

Actually, this credit originated in approximately February of 1976, as a result of litigation between the trailer park and the utility, in which damages were assessed against the utility. As a means of settling the payment of the damage award, the utility gave the park a credit against its monthly water usage. In approximately November of 1976, this litigation was terminated and there was no further need for the billing credit, which the utility promptly discontinued.

Because the receiver of the trailer park continues to take the monthly credits, the utility is not being fully compensated for the amount of service rendered to the park. This has resulted in a deterioration of the financial condition of the utility. Consequently, it seeks authority to discontinue service to the park or to have other assurances that bills will be paid in full.

There has not been sufficient evidence presented by New Mark Glen Mobile Home Park to substantiate its determination that a credit was allowable against bills submitted by the utility, nor was any precise rationale presented to support the manner in which it computed the amount of this credit. The relations between S. T. Corporation and its only customer have been before this commission on two prior occasions. Neither Order No. 7317, dated July 19, 1976 (general investigation and rate increase), nor Order No. 7592, dated January 18, 1977 (rate increase), contain facts tending to corroborate the allegations in this complaint. Thus, on the record made in this proceeding, the complaint should be dismissed.

Based on the unwarranted practice of withholding from the utility each month a portion of the compensation due it for water provided, the request of the utility for authority to discontinue service, or a deposit, bond, or other security, is reasonable. Section 25-10.74(2)(b) and (g), F. A. C., expressly authorize discontinuance of service under these circumstances, but because the trailer park is the utility's only customer, this remedy may not be adequate. Therefore, the utility should be allowed to secure the amount of two months' service by a cash deposit, or irrevocable letter of credit or other acceptable means.

It is therefore recommended that the complaint of New Mark Glen Mobile Home Park against S. T. Corporation be dismissed.

It is further recommended that S. T. Corporation be authorized to require New Mark Glen Mobile Home Park to post a cash deposit or irrevocable letter of credit, or other acceptable security, to assure payment of future bills, in the amount of the charges for service for a period of two months.

The examiner's report was served on the parties on January 24, 1978.

The complainant filed timely exceptions to the examiner's report as follows —

1. The hearing examiner's findings of fact and conclusions are not supported by competent substantial evidence in the record of these proceedings.

2. The hearing examiner's findings of fact and conclusions are contrary to the evidence contained in the record of these proceedings.

3. The hearing examiner's finding that "[t]here has not been sufficient evidence presented by New Mark Glen Mobile Home Park to substantiate its determination that a credit was allowable against bills submitted by the utility . . ." is not supported by, and is contrary to competent substantial evidence of record, in that the only witness called on behalf of the utility admitted that his company was using as much as 100,000 gallons of water per month in its sewage treatment plant for which it was charging the customer.

4. The hearing examiner's finding that there was no ". . . precise rationale presented to support the manner in which [the customer] computed the amount of this credit . . ." is not supported by ,and is contrary to competent substantial evidence of record in this proceeding. The uncontradicted testimony in the record indicates that the credit was computed on the basis of previous billings, and that additional evidence in the possession of the utility exists to verify and/or explain amounts of water used in its sewage treatment plant, which the utility agreed to submit as a late-filed exhibit in this proceeding. Thus far, the utility has failed to submit this documentation as it agreed to do at the hearing.

5. The uncontradicted evidence in the record in these proceedings compels the granting of the customer's request for a credit against its bill for water consumed in the utility's sewage treatment facility.

Oral argument on the exceptions was heard on March 27, 1978. The utility did not file exceptions to the examiner's report or attend the oral argument.

The questions to be resolved in this matter are —

1. Is the complainant entitled to a credit against its water and sewer bills?

2. If so, is the claimed credit properly calculated?

3.  Should the utility be allowed to establish and require a deposit from the complainant?

Water is sold to the complainant by the defendant. Charges therefor are based on master-meter readings. Downstream from the master-meter, the utility diverted water to use in its sewage tratment plant. (Sewage service charges were based on water consumption).

In approximately February of 1976, a water meter was installed on the water line coming into the sewer plant (t 104). There was water being used in the sewer plant which was to be measured by this meter (t 109). The meter was removed approximately January of 1977 (t 104). Complainant was billed September of 1976, for 4,090,000 gallons consumed. The meter at the sewage treatment plant reflected 450,000 gallons used at the sewage treatment plant (11.002%). The October 31st bill for 4,697,000 gallons of water to the complainant reflected 584,000 gallons used at the sewage treatment plant (12.433%) (t 63). Based on the consumption at the sewage treatment plant reflected by these two bills, the customer calculated 11% usage of water by the sewage treatment plant and thereafter for the period ending July 29, 1977, calculated an 11% reduction in the water bill and a corresponding reduction in the sewer bill. (See Exhibit 4.) The customer is not delinquent in the payment of its bills to the utility (t 66). The customer is in the financial condition to continue to pay its bills (t 67).

The diversion of water to the sewage treatment plant was discussed on transcript pages 10-11, 14-15, 16, 21-22, 32, 34, 38-42, 47-49. The witness presented by the complainant (its bookkeeper at the time concerned) established the existence of the meter, its installation, and use (to determine water used by the defendant's sewage treatment plant). This was corroborated by the utility representative (t 76-80, 81-83, 100, 104, 106).

The utility representative contested the entitlement to the credit by an analogy to electric and telephone utilities (t 85-86). However, in his analogy, the witness failed to recognize that electrical service used by the electrical companies and telephone service used by the telephone companies is not charged to the customers and then taken back, it is a part of the overall cost of business of the utility. For this reason the analogy and reasoning are fallacious.

The discussion of the examiner, in the third paragraph of his report, is based entirely upon the statements made by the utility's representative (t 76-77), which is contrary to this witness' testimony as it relates to the time when he was the manager of the complainant mobile home park (t 78-79), as well as that of the bookkeeper who was in charge of the books during the time that the credit was initially calculated. The matter of the litigation is not

properly in the record as the documents relating thereto which are the best evidence, rather than the witness' self-serving summary of their meaning and results. It must, therefore, be rejected in face of his conflicting statements which corroborate and support the testimony of the complainant's bookkeeper.

The testimony of the utility witness relative to the need for establishment of a deposit, at this time, (t 107-112) does not establish a pattern of risk to the utility for non-payment of the bills to warrant at this time, changing from the policy of no deposits to requiring a deposit from the complainant. In the past, the commission has approved changes where the customer's service has been discontinued for non-payment of bills or where the risk of loss through non-payment of bills appears to be unreasonable.

The examiner's findings, quoted in the last paragraph of the body of his report, to the effect of the "unwarranted practice of withholding from the utility a portion of the compensation due it for water provided," are contrary to the evidence in the record and must be rejected and the recommendation, as based thereon, must also be rejected.

The examiner noted on his transmittal memorandum that late-filed Exhibits 4 and 5 have not been submitted. Transcript and Exhibits 1 and 3 were submitted with the report.

Exhibit 3 is identified at page 106 of the transcript as a print-out or copies of the meter-readings by the utility. It was due within ten days after the date of the hearing. Late-filed Exhibit 4 is identified at page 128 of the transcript. Its content is spelled out on page 127, as a written statement detailing the credit that the complainant finds due or believes to be due and the mathematical process used to determine that credit from the beginning to current date. Attached to the transcript is a seven page document, the first page being on the letterhead of New Mark Glen and containing "computations for water and sewer credit;" the second page on the letterhead of S. T. Corporation, Utilities Division, has a statement of charges to the complainant for the period ending October 31, 1976; the third page, also a statement to the complainant for the period ending September 30, 1976, reflects 450,000 gallons "credit for water used at the sewer plant;" the third page, on the letterhead of New Mark Glen, a letter addressed to Mr. Noel David, S. T. Corporation, dated June 15, 1977, is an explanation of credits that the park manager felt were due to the park (complainant herein); the fourth and fifth pages appear to be a copy of Exhibit 2, with the last page preceding the first page as assembled. The sixth and seventh pages appear to be copies of Exhibit 1 in the file. From its content it appears that this document is Exhibit 4, rather than Exhibit 3, as referenced by the examiner.

Exhibit 5, identified at the bottom of page 128, top of page 129, is the utility's response in the form of an exhibit to Exhibit 4. This exhibit does not appear to be in the record.

On the basis of the entire record, the questions presented by this hearing must be answered as follows —

1. Complainant is entitled to credit against its water and sewer bills for water which passed through the master-meter and was billed to the complainant and, subsequent to passing through the master-meter, was diverted to defendant utility's sewage treatment plant.

2. The claimed credit, and the basis for its calculation of the claimed credit, was demonstrated by the complainant based upon two meter-readings available at 11% of the water used. This has not been discredited or shown to be unreasonable, and on the basis of the entire record, we must find that the method of calculation is reasonable and proper.

3. The utility has not shown that the customer has not paid its bills or that the utility has sustained any loss by reason of non-payment of bills. Service to the customer has never been terminated for non-payment of bills. On the basis of this, we must reject the utility's request for establishment of a deposit to secure payment of its bills.

On the basis of the above, the examiner's findings must be rejected as contrary to the evidence. Our Rate Department has reviewed the tariff of the utility as well as the mathematical calculations of the complainant. We find the complainant's mathematical calculations, as contained in the exhibits, to be precise except for the month of July, 1977. On the basis of those calculations, we find the complainant due a credit from the utility in the amount of $5,339.55. The complainant has already deducted $5,069.10 from the bills rendered by the utility and, as a consequence thereof, the complainant is entitled to an additional credit of $270.45. We will therefore authorize the customer to take an additional credit in that amount.

It is therefore ordered that New Mark Glen Mobile Home Park be allowed to deduct an 11% credit against water and sewer bills by S. T. Corporation, as discussed in the body of this order, including an additional credit of $270.45 for July, 1977. The right to the credit was terminated as of July 29, 1977, when the utility stopped diverting water to its sewage treatment plant. To preclude reoccurrance of the diversion, the line must either be removed or permanently obstructed.

It is further ordered that the request by S. T. Corporation for permission to require a deposit from its customers be and the same is hereby denied.